### JOY et al. v. CRAWFORD et al.

(Court of Civil Appeals of Texas. Dallas. Feb. 22, 1913. Rehearing Denied March 8, 1913.)

1. FINDING LOST GOODS (§ 7*)—DUTIES OF FINDER—BAILMENTS—EVIDENCE.

In an action for damages for nicks put in a diamond by defendants, who found it and were later compelled to return it to the plaintiffs, evidence held sufficient to make out a prima facie case that the diamond was damaged while in the possession of defendants.

[Ed. Note.—For other cases, see Finding Lost Goods, Cent. Dig. § 6; Dec. Dig. § 7.*]

2. APPEAL AND ERROR (§ 854*)—REVERSAL—CONCLUSIONS OF LAW BY TRIAL COURT.

Where the conclusion of law on which the trial judge rendered judgment for defendant was that the plaintiff had not made out her case from the evidence, when plaintiff had in fact made out a prima facie case, the judgment cannot be sustained on appeal on the theory that the trial judge determined that defendant's evidence rebutted plaintiff's prima facie case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3403, 3404, 3408-3430; Dec. Dig. § 854.*]

Appeal from Kaufman County Court; Thos. R. Bond, Judge.

Action by Mrs. Emma G. Joy and another against F. R. Crawford and another. Judgment for defendants, and plaintiffs appeal. Reversed.

J. P. Coon, of Terrell, for appellants. Ed. R. Bumpass, of Terrell, for appellees.

RASBURY, J. Appellants sued appellees for $250 for injuring and damaging a diamond of appellants to that extent while in the possession of appellees. There was judgment by the court for the appellees, from which this appeal is taken. The following are substantially the facts developed upon the trial of the case and upon which the judgment was based:

M. A. Joy testified: "Mrs. Joy lost the diamond (both it and the ring being identified by Mr. Joy). That it is now nicked or chipped in three places. Was a perfect stone when lost. Advertised in paper and offered a reward for it. S. L. Dey informed him that he thought defendants had the stone. They refused to give it up. After filing a complaint against them for theft, they gave it up. Then discovered that stone had been nicked and chipped and greatly damaged."

S. L. Dey testified: "Some time during the summer of 1910, M. A. Joy, one of the plaintiffs, came to me and told me about Mrs. Joy losing her diamond. He asked me to keep a watch out for it. Several months thereafterwards F. R. Crawford came to my place of business in Terrell, Tex., and told me that he had a diamond that he wanted to sell, and asked me if I would examine it, and tell him what it was worth and assist him in selling it. I agreed to do this. Mrs. Crawford brought the diamond to my place in a few days and I examined it. I did not take it in my hands, but it was on a small piece of cloth, and I rolled the cloth around, turning the stone over from side to side examining it through my magnifying glass. If there was any nicked or chipped places in it at this time I did not see them. I have handled diamonds for many years, and, after examining this one, I pronounced it a perfect stone. A man examining a diamond under a magnifying glass, who is used to handling them, would have been more than apt to have discovered any nicked or chipped places or other defects in the stone. I will not swear that these defects were not in it at the time I examined it. I told M. A. Joy about Mr. and Mrs. Crawford having the diamond. I felt sure it was Mrs. Joy's diamond, as I knew her stone. (Here witness examined the stone and identified it as being the same stone that the defendants exhibited to him, and that he examined for them, and it was admitted by defendants that it was the same stone.) It is now nicked and chipped in three places. I am acquainted with the reasonable market value of diamonds. This stone before it was nicked or chipped was worth about $400. It is about 2½ carats, and was worth about $150 per carat before it was damaged. It has been damaged about $75 or $80 per carat, or about 50 per cent. of its original value. I asked Mrs. Crawford, when she exhibited the diamond to me for examination, where she got it, and where the bill of it was. She said that they had the stone for many years."

Clifford Sims testified: "It would be impossible for any one making an examination of

the diamond to do so without discovering the nicks and chipped places such as are in this stone. The stone fits in this setting exactly. I have weighed the diamond, and it weighs about 2½ carats. It is what is known as a commercial white, and is very valuable. It is what is called a perfect stone. There are no flaws in the stone except where it has been nicked and chipped in some way."

F. R. Crawford, appellee, testified: In October, 1910, he found the diamond on Moore avenue; knew the Joys had lost one and were advertising for it; said nothing to them about it; noticed no chipped places in it, but his wife did when he gave it to her. When Keller came to his home with ring, he refused to let him see the diamond or fit in the setting; did not injure the stone. It is now just as he found it.

Mrs. Rosana Crawford, wife of appellee, testified: That when the stone was given to her it was nicked or chipped; no injury to it while in her possession; knew Mrs. Joy had lost one and reward was offered, but did not tell her she had found one.

After hearing the testimony the court reached the following conclusions of fact: "First. The court finds that the plaintiff lost a diamond in the city of Terrell, Tex., some time during the year 1910, of the value of $400; that subsequent thereto the defendant F. R. Crawford found the diamond on the street of the city of Terrell, about two months after it had been lost by the plaintiff. Second. I further find that some months afterwards the plaintiff learned of the diamond being in the possession of the defendant Crawford, and called upon him and demanded possession of it, which was refused; that the diamond was finally delivered to J. P. Coon, attorney for the plaintiff, in a damaged condition, showing that it had been chipped or filed, and on account of the flaws in the stone its value had been reduced to about $200. The court was unable to determine from the evidence in this case how, when, the circumstances, or by whom the diamond was damaged after being lost by the plaintiff. The plaintiff sued for damage to the ring." Upon the foregoing facts the court concluded as matter of law as follows: "I conclude that, as a matter of law applicable to the facts of this case, the plaintiff, not having made out her case from the evidence, is not entitled to recover."

[1] Appellants by their second assignment of error assert that the court erred in its conclusions of law, and we think the assign-ment well taken. Under well-settled rules of practice it was the duty of the appellants to develop by proper testimony a prima facie case against appellees. Without intending in any sense to invade the right of the trial judge to pass judgment upon the credibility of the witnesses and the weight to be given their testimony, it can nevertheless be said that no other conclusion can be reached than that a prima facie case by appellants was developed by the evidence. Both appellant M. A. Joy and the witness Dey identified the diamond which was in the possession of appellees as Mrs. Joy's diamond, and the appellees did not deny the fact, although they did not pretend to know whose diamond it was, since they had found it upon the streets of Terrell. Dey also testified that he had examined the diamond at the request of appellees and while in their possession, under a magnifying glass, recognizing it at the time as the property of Mrs. Joy, and that at the time of his examination, which was several months after it had been lost, it was not damaged, but was damaged when he examined it on the second occasion at the time of the trial. Clifford Sims, in corroboration of Dey's testimony, testified that one could not fail upon examination to discover the nicks and chips in the diamond. The amount of the damage to the ring was undisputed. With these practically undisputed facts before him, it seems clear that the court improperly disposed of the case in rendering judgment for appellees on the theory that appellants had failed to make out a case. It was the undoubted right of the trial judge to go further and hold that under the testimony the appellees had rebutted the clear prima facie case made by appellants, and for the purpose of the exercise of that function had before him the testimony of the appellee and his wife.

[2] The conclusions of law filed by the trial judge, however, clearly exclude the conclusion that the judgment rendered was upon the theory that appellants' case had been rebutted or overthrown by the testimony of appellees. He placed it squarely upon the ground that appellants' testimony was insufficient to sustain the burden of establishing such prima facie case, and from which it follows as a corollary that his honor did not determine whether appellees' evidence rebutted the appellants' prima facie case.

For the reasons indicated, we feel it our duty to reverse and remand the case for another trial.